**O**

1
2
3
4
5
6
7

8    UNITED STATES DISTRICT COURT

9    CENTRAL DISTRICT OF CALIFORNIA

10

11   MALIBU MEDIA, LLC,                          Case No. 2:12-cv-3623-ODW(PJWx)

12                      Plaintiff,               **ORDER**
           v.
13
     JOHN DOES 1 through 10,
14
                       Defendants.
15

16        This case concerns the alleged BitTorrent transfer of the pornographic film

17   "Blonde Ambition."  Plaintiff Malibu Media, LLC filed suit for copyright

18   infringement against ten Doe Defendants.  Now, Malibu seeks leave to serve third

19   party subpoenas prior to the Rule 26(f) conference.  (ECF No. 5.)  Generally, parties

20   may not seek discovery from any source prior to the Rule 26(f) conference.  Fed. R.

21   Civ. P. 26(d).  But exceptions are allowed by court order.  *Id.*  Malibu seeks an

22   exception, contending that the anonymity afforded by the Internet cloaks all

23   information about the infringers, save their IP addresses.  (Mot. 2.)  Without

24   subpoenaing these infringers' internet service providers ("ISP"), Malibu asserts there

25   is no other way to reveal the infringers' identities.  (Mot. 5.)  For the reasons

26   discussed below, the Court **GRANTS IN PART** Malibu's motion.[1]

27

28   [1] Having carefully considered the papers filed in support of this motion, the Court deems the matter
     appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

### I.   BACKGROUND

The BitTorrent protocol allows users to transfer files over the Internet.  Like other file-sharing technology, BitTorrent may be used to legally upload or download computer files—and it may also be used to pirate copyrighted software, movies, music, and anything else that may exist on computer-readable media.  But unlike other file-sharing technology, where users connect to each other or to a central repository to transfer files, files shared via BitTorrent exist in a swarm, with pieces of the whole file distributed among the users.

The following example illustrates this technology:

- The original user posts a 100MB movie file on a BitTorrent tracker website. The file exists only on that user's computer—the file is not uploaded to the tracker website;
- Other users discover this movie file through the tracker website and log onto the BitTorrent swarm to download this file;
- On the original user's computer, BitTorrent software divides the 100MB movie file into 10,000 pieces, each representing a 10kB chunk;
- As downloaders log onto the BitTorrent swarm, these 10kB pieces are randomly distributed—the first piece to the first downloader, the fifth piece to the second downloader, etc.;
- After the initial pieces are transferred, additional pieces are randomly transferred to the downloaders—the first downloader may now have the first and 500th pieces; the second downloader may now have the second and 900th pieces, etc.;
- Once sufficient pieces have been distributed to downloaders in the swarm, the BitTorrent protocol will automatically transfer pieces between downloaders— the first downloader may receive the 900th piece from the second downloader, the second downloader may receive the first piece from the first downloader, etc.;

- The BitTorrent swarm becomes larger as more users log on and more pieces are distributed;

- Once every piece of the original file has been uploaded to the collective swarm, the original uploader may log off—the entire movie exists in pieces in the swarm;

- When a downloader has received all 10,000 pieces of the 100MB movie file, his BitTorrent software reassembles the pieces to reconstruct the original file on his computer;

- These completed downloaders may then log off, or may remain online to continue seeding the pieces of the file to other downloaders.

There are several nuances about the BitTorrent protocol. First, every participant may upload and download pieces of the file. Second, these individual pieces are useless until a user has all of them; the user cannot reassemble the original file with even 99% of the pieces. Third, a user may log on and download just one piece (e.g., a 10kb piece) of the file and then log off, waiting to download the other pieces later or discarding the downloaded piece. Fourth, a user may restrict his BitTorrent software to only download pieces, and not upload.

When Malibu discovered that its film was being pirated via BitTorrent, it hired IPP, Limited to investigate. (Fieser Decl. ¶ 11.) IPP logged onto the BitTorrent swarm for the film and downloaded various pieces of the movie file from the Defendants. (*Id.* ¶ 17–19.) These pieces, when reassembled with other pieces, result in the copyrighted film. (*Id.* ¶ 20–21.) By this investigation, IPP discovered the IP addresses of the 10 Doe Defendants, along with the date and time of the alleged infringing activity. (*Id.* ¶ 22.)

/ / /

/ / /

/ / /

/ / /

## II.   DISCUSSION

Malibu asks the Court to subpoena the ISPs owning these 10 IP addresses, to uncover their subscriber logs to identify the names and addresses of the 10 Doe Defendants.

**A.     Third party subpoenas**

In lawsuits against Doe defendants, the plaintiff should ordinarily be allowed discovery to uncover their identities. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  But discovery may be denied if it is (1) clear that discovery would not uncover the identities, or (2) that the complaint would be dismissed on other grounds. *Id.*

Under the first condition, Malibu represents that these ISP subscriber logs will lead to the individual infringers. (Mot. 5.)  Assuming that is true, the subscriber may not be the actual infringer.  For instance, a person may be the subscriber, but his roommate is the actual infringer.  And the subscriber may have his home network configured to allow visitors, including strangers, to access the Internet—and use BitTorrent.  Further, the subscriber may be a business (e.g., a coffee shop), and Internet access may be open to all employees and customers.  In some situations, the identity of the subscriber may yield the identity of the infringer; in others, the infringer may never be known.

Although the Court is inclined to allow Malibu to conduct this discovery, the potential for abuse is very high.  The infringed work is a pornographic film.  To save himself from embarrassment, even if he is not the infringer, the subscriber will very likely pay the settlement price.  And if the subscriber is a business, it will likely pay the settlement to save itself from the hassle and cost of complying with discovery— even though one of its customers or employees is the actual infringer.

/ / /

/ / /

/ / /

/ / /

4

1      As for the second *Gillespie* condition, Malibu has not shown sufficient facts to

2   show that the complaint should not be dismissed.  Malibu avers that the 10 Doe

3   Defendants have each connected to the IPP server to "transmit a full copy, or a portion

4   thereof" of "Blonde Ambition."  (Compl. ¶ 40.)  But Malibu does not show which

5   Doe Defendants transmitted a full copy, and which transmitted just one piece of the

6   file.  As noted above, individual BitTorrent file pieces are worthless—by themselves

7   they can never be reconstructed into the original file.  Nor do the individual file pieces

8   resemble a partial movie clip: if a 10-minute movie file was split into 60 pieces by

9   BitTorrent, the resulting pieces are not playable 10-second clips of the movie.  If it is

10  the case that a Doe Defendant logged onto the BitTorrent swarm, downloaded and

11  then uploaded a single piece to the IPP server, and then logged off, all he has done is

12  transmit an unusable fragment of the copyrighted work.  Without the remaining

13  pieces, this Doe Defendant cannot do anything with this scrap of data.

14      At this stage, the Court declines to opine whether transmitting pieces of a

15  copyrighted work using BitTorrent, without transmitting all of the pieces, constitutes

16  copyright infringement.  But the Court notes that Malibu's case is weak if all it can

17  prove is that the Doe Defendants transmitted only part of all the BitTorrent pieces of

18  the copyrighted work.

19      In sum, the Court finds that privacy concerns are balanced with the need for

20  discovery by allowing Malibu to subpoena the ISP for John Doe 1.  Though Malibu

21  now has the keys to discovery, the Court warns Malibu that any abuses will be

22  severely punished.

23  **B.      Defendants are improperly joined**

24      Malibu offers no evidence justifying the joinder of the Doe Defendants.

25  According to Malibu, these 10 Doe Defendants connected to the IPP server on

26  different dates and times, and from different locations.  (Compl. Ex. A.)  The loose

27  proximity of the alleged infringments (March 5, 2012–April 12, 2012) does not show

28  that these Defendants participated in the same swarm.  As discussed above, a

1   downloader may log off at any time, including before receiving all the pieces of the

2   copyrighted work.  Without evidence that these Does acted in concert, joinder is

3   improper—the Doe Defendants should be severed and dismissed under Federal Rule

4   of Civil Procedure 21.

5   **C.      The economics of pornographic copyright lawsuits**

6          The Court is familiar with lawsuits like this one.  *AF Holdings LLC v. Does 1-*

7   *1058*, No. 1:12-cv-48(BAH) (D.D.C. filed January 11, 2012); *Discount Video Center,*

8   *Inc. v. Does 1-5041*, No. C11-2694CW(PSG) (N.D. Cal. filed June 3, 2011); *K-Beech,*

9   *Inc. v. John Does 1-85*, No. 3:11cv469-JAG (E.D. Va. filed July 21, 2011).  These

10  lawsuits run a common theme: plaintiff owns a copyright to a pornographic movie;

11  plaintiff sues numerous John Does in a single action for using BitTorrent to pirate the

12  movie; plaintiff subpoenas the ISPs to obtain the identities of these Does; if

13  successful, plaintiff will send out demand letters to the Does; because of

14  embarrassment, many Does will send back a nuisance-value check to the plaintiff.

15  The cost to the plaintiff: a single filing fee, a bit of discovery, and stamps.  The

16  rewards: potentially hundreds of thousands of dollars.  Rarely do these cases reach the

17  merits.

18         The federal courts are not cogs in a plaintiff's copyright-enforcement business

19  model.  The Court will not idly watch what is essentially an extortion scheme, for a

20  case that plaintiff has no intention of bringing to trial.  By requiring Malibu to file

21  separate lawsuits for each of the Doe Defendants, Malibu will have to expend

22  additional resources to obtain a nuisance-value settlement—making this type of

23  litigation less profitable.  If Malibu desires to vindicate its copyright rights, it must do

24  it the old-fashioned way and earn it.

25  / / /

26  / / /

27  / / /

28  / / /

### III.   CONCLUSION

For the reasons discussed above, Malibu's Motion is **GRANTED IN PART**. Malibu may now subpoena Cox Communications for the identity of John Doe 1.  The other Doe Defendants are hereby severed from this case.  If Malibu chooses to refile against John Does 2-10, it must also submit a notice of related case.

**IT IS SO ORDERED.**

June 27, 2012

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**